#30171-a-MES
**2023 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CODY HARWOOD,                                    Plaintiff and Appellant,

    v.

SARAH CHAMLEY,                                   Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE M. KEVIN KRULL
Judge

* * * *

GEORGE J. NELSON
Rapid City, South Dakota        Attorney for plaintiff and
                                     appellant.


ANGELA COLBATH of
Colbath & Sperlich, P.C.
Rapid City, South Dakota        Attorneys for defendant and
                                     appellee.

* * * *

CONSIDERED ON BRIEFS
APRIL 25, 2023
OPINION FILED **07/12/23**

#30171

SALTER, Justice

[¶1.] After Cody Harwood and Sarah Chamley ended their romantic relationship, the circuit court conducted a trial to determine custody of the parties' two children. The court granted Sarah primary physical custody, and Cody appeals, arguing that the court abused its discretion. We affirm.

**Factual and Procedural Background**

[¶2.] Cody and Sarah began dating in 2016, and Sarah eventually moved into the Sturgis home where Cody resided. The couple had their first child, P.H., in 2017 and a second child, L.H., in 2018. Also living in the home were Sarah's two teenage children, who she shares with her estranged husband.[1] Sarah left the Sturgis home in October 2020 when her relationship with Cody ended.

[¶3.] When living together, Cody was employed and provided for Sarah and their children financially while Sarah stayed home to care for P.H. and L.H. After moving out, Sarah obtained her own housing and employment.

[¶4.] Cody petitioned the circuit court for "Interim and Primary Custody, Child Support, and Paternity" determinations. The parties entered into a February 2021 "Stipulation for Interim Custody and Support, and Appointment of Custody Evaluator" (interim agreement), which the court incorporated into an interim order. The interim agreement provided for shared parenting under which each party received equal parenting time with the children. The arrangement eventually developed into an alternating week on/week off schedule.

---

1. Though they are estranged from their spouses, both Sarah and Cody remain married to other people.

-1-

[¶5.] The circuit court's interim order also incorporated the parties' agreement to appoint Tom Collins to conduct a custody evaluation.[2] As part of his work, Collins spent time observing the children in each parent's home along with interviewing Cody, Sarah, and others connected to the family, including Cody's new live-in girlfriend, Katie Gould, and Sarah's two older children.

[¶6.] During Collins's interviews, each parent expressed concerns about the other, ranging from physical abuse to excessive drinking. Sarah also noted that Cody suffered from post-traumatic stress disorder as a result of his service in the United States Marine Corps. Particularly relevant to this appeal, Collins also considered information relating to Sarah's misdemeanor conviction for simple assault (domestic) after she bit Cody's face during an altercation in which both had been drinking.

[¶7.] In addition, Collins's investigation led him to conclude that Sarah was the children's primary caretaker and was more familiar with their daily care and needs. Collins also believed that Sarah had provided consistency for the children. In his report, Collins noted that Cody, while overall attentive and caring, was not as familiar with the children's needs. Particularly troubling was the fact that Cody had introduced a new romantic interest, Katie, to the children almost immediately after the relationship with their mother ended. This, Collins noted, continued a perceptible pattern of successive short-term marriages and serious relationships that raised stability concerns.

---

2. Collins has completed over 800 custody evaluations in South Dakota.

[¶8.]     As part of the custody evaluation, Collins also administered a version of the Minnesota Multiphasic Personality Inventory, known as the MMPI-2-RF, to Sarah, Cody, and Katie. Collins's written evaluation described the MMPI-2-RF as the updated version of the MMPI-2, which Collins stated is the most widely used means of assessing personality traits in child custody cases. *See Baker v. Rapid City Reg'l Hosp.*, 2022 S.D. 40, ¶ 9 n.2, 978 N.W.2d 368, 373 n.2 (describing the MMPI-2-RF as an updated version of the MMPI-2). The information collected in Collins's administration of the MMPI was then interpreted by a licensed psychologist. While Sarah's MMPI results placed her statistically in the average range for parents, both Cody's and Katie's test results were deemed unreliable by the psychologist due to unnaturally virtuous responses and concerns about underreporting symptoms.

[¶9.]     Collins oriented his custody evaluation around the best interests of the child factors set out in *Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶ 24, 591 N.W.2d 798, 807. This analysis featured a substantive discussion relating the specific facts revealed by Collins's investigation and concluded with a recommendation as to whether a particular *Fuerstenberg* factor favored one parent or the other.

[¶10.]     In addition to concluding that the *Fuerstenberg* factors, on the whole, favored Sarah, Collins also considered whether continuing the joint custody arrangement was in the children's best interests. Ultimately, Collins opined that joint custody would be difficult because "the parties do not show mutual respect

toward the other and [ ] do not effectively communicate regarding the best interests of [the children][.]"[3]

[¶11.]	In the end, Collins recommended that the parties share legal custody of the children, with Sarah having primary physical custody.  He also recommended that Cody have parenting time every Thursday evening to Friday evening, every other weekend, and every other week during the summer, in addition to splitting holidays.[4]  Collins calculated that this resulted in an average of ten or eleven days of parenting time for Cody a month, which Collins noted is more than the South Dakota Parenting Guidelines recommend.

[¶12.]	After receiving the custody evaluation, the circuit court conducted a March 2022 bench trial to decide the custody issues.  There was testimony from nine witnesses throughout the two-day trial including Collins, Cody, and Sarah.  Both Cody and Sarah reiterated their concerns about the other during their testimony.  As for their requested resolutions, Sarah was generally of the opinion that Collins's recommendations were appropriate, while Cody asked the court to make the interim week on/week off parenting arrangement permanent.

[¶13.]	Based on his testimony and the cross-examination of Collins, Cody took particular issue with several of the custody evaluation's factual determinations and the apparent lack of dispositive weight Collins placed on Sarah's simple assault

---

3.	Collins stated that Cody flatly refused to speak with Sarah.

4.	Collins recommended exchanging the children every other week during the summer, starting in the summer of 2024 after both children have started school.  In the summer of 2023, Collins recommended that Cody should have parenting time for two two-week periods starting June 1 and July 1.

(domestic) conviction. During Collins's cross-examination, Cody's attorney pointed Collins to SDCL 25-4-45.5, which provides that a "conviction . . . of domestic abuse creates a rebuttable presumption that awarding custody to the abusive parent is not in the best interest of the minor." Collins responded that whether the presumption was overcome was a question that should be reserved for the court but also indicated that he had, indeed,

> considered [Sarah's conviction] extensively in my evaluation by referring to it as it fits into the framework of the *Fuerstenberg* factors and the framework of the joint physical custody act. I talked about it at length as to how it impacts the children which is how I view domestic violence being particularly relevant in child custody cases. So that being said, it's safe to say my presumption is that that arrest for domestic violence in February of 2018 is not enough to automatically flip this case to Cody Harwood[.]

[¶14.] At the conclusion of the trial, the circuit court took the case under advisement and asked the parties to submit proposed findings of fact and conclusions of law. Cody proposed a conclusion of law "that the parties have joint physical and legal custody of the children but for [Cody] to be named their primary custodial parent [and] . . . that it is in the children's best interest that the parties continue with their current parenting schedule, exchanging the children every week on Mondays at their daycare."

[¶15.] For her part, Sarah's proposed conclusions of law stated that the court took judicial notice of her simple assault (domestic) conviction and that "the totality of the evidence presented in this matter has sufficiently rebutted any presumption." Further, Sarah proposed conclusions of law that applied the *Furstenberg* factors to support the ultimate conclusion that it would be in the children's best interests to

grant Sarah primary custody with Cody having parenting time in accordance with Collins's recommendations.

[¶16.] The parties' proposals were submitted to the court in April 2022, and the circuit court filed its findings and conclusions in November 2022. As Cody notes in his appellate submissions, it does not appear that there is a difference between Sarah's proposed findings of fact and conclusions of law and those entered by the circuit court.

[¶17.] Cody appeals, challenging the circuit court's decision designating Sarah as the children's primary custodial parent and rejecting his proposal to continue the interim week on/week off custody arrangement. As indicated below, Cody does not allege that the court's findings are unsupported by evidence but rather claims that the court overlooked the presumption in SDCL 25-4-45.5, accorded dispositive weight to Sarah's role as the primary caretaker, and abdicated its judicial responsibility by, in his view, indiscriminately accepting Collins's custody evaluation and testimony.

**Analysis and Decision**

[¶18.] "Child custody determinations are reviewed for an abuse of discretion." *Flint v. Flint*, 2022 S.D. 27, ¶ 28, 974 N.W.2d 698, 703 (quoting *Evens v. Evens*, 2020 S.D. 62, ¶ 21, 951 N.W.2d 268, 276). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Id.* (citation omitted).

[¶19.] The text of SDCL 25-4-45 provides that "[i]n awarding the custody of a child, the court shall be guided by consideration of what appears to be for the best

interests of the child in respect to the child's temporal and mental and moral welfare." As we recently described, the seven *Fuerstenberg* factors—parental fitness, stability, primary caretaker, child's preference, harmful parental misconduct, separating siblings, and substantial change of circumstances—"have become an accepted means of determining child custody disputes, [but] a court is not, strictly speaking, required to examine them in its best interests determination." *Flint*, 2022 S.D. 27, ¶ 30, 974 N.W.2d at 703. Required or not, the *Fuerstenberg* factors are an "eminently practical . . . means for a court to achieve form and structure in its analysis." *Id.* ¶ 31.

[¶20.] Cody develops the three appellate arguments identified above as follows: First, he argues that the circuit court erred "in waiving off the criminal misdeed by [Sarah], and declaring the [SDCL 25-4-45.5] presumption to have been rebutted, upon a 'totality of the circumstances.'" Second, he argues the court "failed to honor the holding of *Kreps v. Kreps*, 2010 S.D. 12, 778 N.W.2d 835, wherein this Court rejected the notion that the primary caretaker factor should prevail over all other factors a trial court may consider in determining child custody." Finally, Cody claims that the court abdicated its judicial authority to Collins when it "simply adopt[ed] the custody evaluator's recommendation wholesale, [ ]'rubber stamped' it[,] and [accepted] [Sarah's] proposed Findings and Conclusions as if the court was waiving off its own duty to closely examine the testimony and exhibits for itself."

### SDCL 25-4-45.5

[¶21.] The provisions of SDCL 25-4-45.5 create a rebuttable presumption that "awarding custody to the abusive parent is not in the best interest of the minor."

We discussed the effect of this statute in *Shelstad v. Shelstad*, 2019 S.D. 24, ¶¶ 28–30, 927 N.W.2d 129, 136, explaining that the presumption ceases upon a showing sufficient to rebut it. As support, we cited SDCL 19-19-301, which provides:

> In all civil actions and proceedings, unless otherwise provided for by statute or by this chapter, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption . . . . *When substantial, credible evidence has been introduced to rebut the presumption, it shall disappear* from the action or proceeding, and the jury shall not be instructed thereon.

(Emphasis added); *see also Matter of Estate of Gaaskjolen*, 2020 S.D. 17, ¶ 21, 941 N.W.2d 808, 814 ("A presumption will serve as and in the place of evidence in favor of one party or the other until prima facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence." (citation omitted)).

[¶22.] Here, Cody's argument does not correctly account for the fleeting nature of SDCL 25-4-45.5's presumption in instances where the evidence is sufficient to rebut it. He argues, instead, that the circuit court simply "waived [the presumption] off." However, this claim is unsustainable.

[¶23.] The topic of Sarah's conviction was thoroughly developed in the parties' trial testimony, addressed by Collins, and, ultimately, considered by the court. In its findings, the court acknowledged the statutory presumption and found that it had been rebutted by "the totality of the evidence presented in this matter[.]"

[¶24.] Perhaps more to the point, the circuit court correctly remained focused upon the children's best interests. In truth, Cody's argument regarding SDCL 25-4-45.5 is not so much that the court overlooked the presumption—it surely did not—

but more that the court did not regard the presumption and Sarah's conviction as the dispositive consideration in determining the primary custodial parent. But this view is inconsistent with the court's overarching obligation to train its attention upon the best interests standard, and it is also contrary to SDCL 19-19-301's rule concerning the nature of evidentiary presumptions.

### *Primary Caretaker Factor*

[¶25.] Cody points out that we rejected an argument in *Kreps* that the "primary caretaker [factor] should be the primary factor in determining child custody disputes[.]" 2010 S.D. 12, ¶ 28, 778 N.W.2d at 844. He also cites our *Evens* decision where we similarly rejected an argument that "the primary caregiver should be accorded determinative weight." 2020 S.D. 62, ¶ 31, 951 N.W.2d at 279.

[¶26.] While identifying accurate statements of law, Cody has not identified specific support from the record to establish his argument that the circuit court considered the primary caretaker factor to be preeminent. Instead, he broadly claims that a "review of Collins' evaluation report and his testimony seems to do just the opposite of what *Kreps* denounced[,]" noting that Collins stated the primary caretaker factor was "[a] significant factor."

[¶27.] Based upon our review of the record, we cannot accept Cody's argument that the circuit court gave too much weight to its primary caretaker determination. The court accurately determined that Sarah had historically been the children's primary caretaker and had stayed at home to care for them when they were younger. As a consequence, the court found that the children had a closer connection to their mother. The court considered this fact, along with others, in its

overall determination of the children's best interests, as the record and the court's findings and conclusions plainly indicate.

[¶28.]    Though it is true that a court could abuse its discretion by myopically considering the primary caretaker in its best interests determination to the exclusion of other relevant considerations, this is not such a case.

### *Abdication of Authority*

[¶29.]    "[J]udges, not custody evaluators, have the responsibility to make custody decisions." *Maxner v. Maxner*, 2007 S.D. 30, ¶ 17, 730 N.W.2d 619, 623. Naturally, this means that circuit courts may not simply adopt a custody evaluator's view arbitrarily, but should instead consider all of the evidence "to perform an objective custody analysis." *Id.* ¶ 15. And while "it is well within the court's discretion to adopt [ ] findings of fact and conclusions of law which it deems most appropriate, regardless of their source," the court may not, of course, consign its role to that of "a judicial rubber stamp[.]" *Feldhaus v. Schreiner*, 2002 S.D. 65, ¶ 14, 646 N.W.2d 753, 757.

[¶30.]    The only possible support for Cody's "judicial rubber stamping" argument is the fact that the court accepted Sarah's proposed findings of fact and conclusions of law which were, in turn, consistent with Collins's custody evaluation and testimony. But this bare claim, standing alone, fails to recognize the more likely explanation that Sarah's proposed findings and conclusions simply aligned with the court's own view of the case.

[¶31.]    Our review of the trial transcript reveals that the circuit court was decisively engaged during the presentation of evidence. The court apparently felt

the need to consider the case further, opting not to issue a bench ruling at the close of the evidence and entering its findings and conclusions at a later time. Under the circumstances, we can find no support for the argument that the court abdicated its independent adjudicative role.

[¶32.]     And while Cody generally challenges the custody determination, he does not dispute any discrete factual findings.[5] From our review, the circuit court's findings are sourced to evidence contained in the record, and it appears the court carefully weighed all of the evidence in the exercise of its fact-finding role. *See Evens*, 2020 S.D. 62, ¶ 24, 951 N.W.2d at 277 ("Indeed, '[t]he credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the circuit court and we give due regard to the circuit court's opportunity to observe the witnesses and the evidence.'" (alteration in original) (quoting *Hiller v. Hiller*, 2018 S.D. 74, ¶ 22, 919 N.W.2d 548, 555)).

## Conclusion

[¶33.]     Cody's somewhat melodramatic claim that the court's discretion "is not a sword to wield against persuasive evidence and legislative mandates" fundamentally misstates the role of a trial court, which has nothing to do with wielding a sword at all. Rather, the court must engage in a highly fact-intensive and nuanced determination of the children's best interests. These decisions are

---

5.    Cody's principal argument at trial and on appeal is that the interim week on/week off parenting schedule should have continued, using the colloquialism, "If it ain't broke, don't fix it." But Cody's not-broke premise is not sound. The circuit court specifically found that "[s]ince entering the shared parenting plan approximately one year ago, [the parties'] interactions have continued to be tense and non-productive."

weighty and have a significant impact upon children, but they are necessary in the absence of consensus between parents about how to best co-parent their children.

[¶34.] After a careful review of the record, we believe the circuit court's child custody determination was within the range of permissible choices and was supported by competent evidence. We affirm.

[¶35.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.