#29221-r-PJD
2021 S.D. 23

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JUSTIN D. METZGER,                                    Plaintiff and Appellant,

v.

HOPE M. METZGER,                                    Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

THOMAS L. SANNES of
Delaney, Nielsen & Sannes, P.C.
Webster, South Dakota                          Attorneys for plaintiff and
                                                                appellant.


HOPE M. METZGER
Aberdeen, South Dakota                          Defendant.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **04/14/21**

DEVANEY, Justice

[¶1.]        Justin Metzger filed a motion for order to show cause why Hope

Metzger was not in contempt of the circuit court's judgment and decree of divorce.

The circuit court found that Hope was not in contempt of court because she was not

personally served with the judgment.  We reverse.

### Factual and Procedural Background

[¶2.]        In April 2018, Justin filed a divorce action against Hope.  The divorce

trial was held in January 2019.  During trial, the parties informed the circuit court

that they had reached a settlement agreement.  With regard to child custody,

Justin's attorney informed the court that the parties agreed to "share joint legal

custody of the parties' minor child [C.M.]."  His attorney also advised "[t]hat Hope

shall have primary physical custody subject to Justin's reasonable and liberal

visitation rights in accordance with the South Dakota Parenting Guidelines with a

minimum modification that during the summer he will have ten weeks of

visitation."  The circuit court then questioned both parties about the agreement:

> THE COURT: So the agreement is very extensive, but the
> attorneys took the time to outline it quite clearly.  I believe I
> understand it, but I like to make sure that the parties do, also.
> Justin, you were able to hear the explanation of the agreement
> provided by the attorneys?
>
> JUSTIN: Yes.
>
> THE COURT: Is that the understanding that you have of what
> the agreement is?
>
> JUSTIN: Yes, I do.
>
> THE COURT: You're willing to be bound by that agreement by
> court order?

JUSTIN: Yes.

THE COURT: And, Hope, you were able to hear the agreement as outlined by the attorneys?

HOPE: Yes.

THE COURT: You understand the terms of the agreement?

HOPE: Yes.

THE COURT: Is that the agreement as you understood it?

HOPE: Yes.

THE COURT: You're willing to be bound by that agreement by court order?

HOPE: Yes.

Following this exchange, the court then approved the agreement and orally ordered that the agreement was effective immediately, emphasizing that signing the agreement would simply "formalize" it and put it into writing.

[¶3.] On January 31, 2019, the parties signed a written property and marital settlement agreement that conformed with the oral agreement. The circuit court incorporated this agreement into its judgment and decree of divorce entered on February 21, and Justin served the notice of entry of the judgment on Hope's attorney on February 25.

[¶4.] In May 2019, Justin picked up C.M. to begin his ten-week summer visitation. In June, the parties mutually agreed that C.M. would spend a weekend with Hope because C.M. missed her siblings. Hope and Justin set a time and place where Hope would return C.M. to Justin to finish out the summer visitation; however, contrary to their agreement, Hope refused to return C.M.

[¶5.]      After being denied further visitation, Justin filed a motion for an order requiring Hope to show cause why she should not be held in contempt for refusing to comply with the visitation provisions incorporated in the judgment and decree of divorce. Justin served the motion on Hope personally after Hope's attorney indicated he would not represent her at the show cause proceeding.

[¶6.]      The court held a hearing on the motion in August 2019. At the hearing, Hope testified that her attorney never provided her with any documentation throughout the case. She further claimed that she did not read any part of the agreement she signed and that her attorney did not inform her about its contents. Hope acknowledged that at the January 2019 hearing, she told the court she understood the agreement and assented to be bound by it. The circuit court nevertheless found that Hope was not in contempt of the judgment and decree of divorce because she was not personally served with the judgment. The court ruled that service on Hope's attorney was insufficient to prove she had knowledge of the judgment. Additionally, the court ruled that Hope could not be held in contempt of the signed agreement between the parties because it was not an order of the court.

[¶7.]      Justin filed a motion for reconsideration, providing the court with additional legal authority relating to service of process. A hearing was held on the motion in October 2019. At the hearing, Justin advised that the remedy he was seeking was makeup time for the visitation he lost with C.M. the previous summer. He also requested that the circuit court create a calendar detailing visitation for every week, weekend, and holiday until C.M. reaches the age of majority. Justin added that he did not want Hope to be fined or go to jail, and although he initially

requested attorney fees in his contempt motion, he advised the court at the hearing on his motion to reconsider that he was no longer requesting such fees. When the circuit court asked Hope whether an order outlining the days and times that visitation should be exchanged would be a good idea, she replied, "Yes, it would, but this is the thing, *I agreed to the ten weeks*, but I was supposed to have [C.M.] every other weekend." (Emphasis added.)

[¶8.] At the end of the hearing, the circuit court found that Hope did not comply with the order. However, the court ruled that Hope could not be found in contempt because she was not given proper notice of the order. The court reasoned that a party can only be found in contempt of court if the opponent establishes that the party was personally served with, or had actual notice of, *the order*. The court rejected Justin's suggestion that the current rules of civil procedure allowing electronic service on a party's attorney changed these requirements. It then denied Justin's motion for reconsideration.

[¶9.] Justin appeals, arguing that the circuit court erred in finding that Hope was not in contempt based upon the court's determination that she did not have actual notice of the order at issue. Hope, a pro se litigant, did not file an appellate brief.

**Analysis and Decision**

### 1. *Whether the issue raised on appeal is moot.*

[¶10.] After Justin filed his notice of appeal of the court's order denying his contempt motion, Justin filed a motion to modify child support, visitation, and custody. As a result of the motion, Justin obtained primary custody of C.M. Given

that this change in custody essentially subsumes the remedy Justin was seeking on the earlier contempt motion, this raises the issue whether this appeal is now moot.[1]

[¶11.]	"This Court renders opinions pertaining to actual controversies affecting people's rights." *Skjonsberg v. Menard, Inc.*, 2019 S.D. 6, ¶ 12, 922 N.W.2d 784, 787 (quoting *Larson v. Krebs*, 2017 S.D. 39, ¶ 13, 898 N.W.2d 10, 15). "[A]n appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." *Krebs*, 2017 S.D. 39, ¶ 13, 898 N.W.2d at 15-16 (alteration in original) (quoting *Sullivan v. Sullivan*, 2009 S.D. 27, ¶ 11, 764 N.W.2d 895, 899).

[¶12.]	Although the relief Justin requested from the circuit court has now effectively been granted, because of the contentious nature of the relationship between these parties, a finding of contempt, in and of itself, may impact the court's resolution of likely future disputes between them.[2]  Additionally, a party may be entitled to attorney fees in a contempt action where the opposing party failed to comply with the terms of a visitation order.  *See Hiller v. Hiller*, 2018 S.D. 74, ¶ 30, 919 N.W.2d 548, 556-57.  Even though such a request was initially made but later

---

1.	Although neither party has raised this issue, it is one that the Court can raise and address sua sponte. *See Zimmerman v. Bohr*, 72 S.D. 78, 80, 30 N.W.2d 4, 4 (1947) ("[T]he continued existence of a controversy, pending the appeal, is essential to appellate jurisdiction."); *see also Wegner v. Siemers*, 2018 S.D. 76, ¶ 4, 920 N.W.2d 54, 55 ("If a question of appellate jurisdiction exists, we are required to take notice of the question regardless of a party's failure to raise it.").

2.	Justin's counsel advised the circuit court at the hearing on the motion to reconsider that he "could file a motion for contempt every other weekend."

withdrawn by Justin, the court maintains the discretion to determine the appropriate sanction for a violation of its order. This could include any sanction the court deems "appropriate to the facts and circumstances of the case." *See* SDCL 25-4A-5. For these reasons, we conclude this appeal is not moot.

**2.** **Whether the circuit court clearly erred when it found that Hope was not in contempt of the order at issue.**

[¶13.] "A court's common law contempt power includes two distinct varieties—civil contempt and criminal contempt." *Hiller*, 2018 S.D. 74, ¶ 20, 919 N.W.2d at 554 (citation omitted). "[C]ivil contempt is coercive in nature." *Id.* "The purpose of the civil contempt power is to force a party to comply with orders and decrees issued by a court in a civil action . . . ." *Taylor v. Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d 458, 470-71 (internal quotation marks omitted) (citation omitted). The proceeding here was a civil contempt proceeding, requiring the following elements to be established: "(1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Id.* ¶ 39, 928 N.W.2d at 471 (citation omitted). "We review a trial court's findings as to contempt under a clearly erroneous standard." *Id.* ¶ 15, 928 N.W.2d at 465 (quoting *Muenster v. Muenster*, 2009 S.D. 23, ¶ 15, 764 N.W.2d 712, 717).

a. *Existence of an order*

[¶14.] The order at issue pertains to custody and visitation. The circuit court orally approved the parties' settlement agreement, and at a hearing on January 4, 2019, the court ordered them to comply with all the terms contained in the agreement. The court then entered a written judgment and decree of divorce on

February 22, 2019, which incorporated the terms and conditions of the agreement, including the provision granting Justin ten weeks of summer visitation with the minor child. Thus, the court correctly determined that the first element of contempt was met.

### b. Knowledge of the order

[¶15.] At the initial contempt hearing, the circuit court found the second element requiring knowledge of the order was not met because Hope had not been personally served with a copy of the judgment and decree of divorce. In so ruling, the circuit court relied on this Court's holding in *Krueger v. Krueger*, that:

> Under the provisions of sections 330 and 562 Code of Civil Procedure, before appellant could be adjudged guilty of contempt of court in not obeying the mandates of such decree, it must be shown that a copy of such decree was personally served upon him before the commission of, or omission to do, those acts the commission or omission of which constitute the alleged contempt.

32 S.D. 470, 143 N.W. 368, 369 (1913) (citation omitted). The procedural rules in effect in 1913 that this Court applied in *Krueger* pertained to the execution of civil judgments and the service of notices, motions, or other filings in civil proceedings.[3] The current counterpart to section 562 is SDCL 15-6-5(b), which reads essentially the same as it did in 1913. It states that the provisions of SDCL 15-6-5—which relate to methods of service upon a party, including service on a party's attorney and service by mail—are not applicable "to service of a summons or other process or

---

3. The current counterpart to section 330 of the 1913 Code of Civil Procedure is SDCL 15-18-44, a statute addressing how officers who fail to perform their duties in enforcing writs or warrants of execution may be held in contempt. It is irrelevant to the contempt proceeding at issue here.

of any paper to bring a party into contempt." Since *Krueger*, the Court has interpreted this language in SDCL 15-6-5(b) to require personal service of an *order to show cause* directing a party to show why the party should not be held in contempt. *See In re Gillespie*, 397 N.W.2d 476, 477-78 (S.D. 1986); *see also First Nat'l Bank of Omaha v. Kolucek*, 2008 S.D. 37, ¶ 8 n.3, 750 N.W.2d 472, 474 n.3. However, this procedural rule does not speak to whether the person served with an order to show cause must have been personally served with the underlying order that the person has been alleged to have violated.

[¶16.] The circuit court did not cite, nor are we aware of, any current procedural rule requiring a party to be *personally served* with a judgment, decree, or other order of a court before the party can be held in contempt of such order. At the later hearing on Justin's motion to reconsider, the circuit court acknowledged that personal service might not be the only way to satisfy the knowledge element. Nevertheless, the circuit court maintained that Justin must prove Hope had "actual notice of *the order* which was entered in order to be found in contempt." (Emphasis added.)

[¶17.] In this Court's more recent decisions addressing what is required to establish the knowledge element underlying a contempt finding, we have not confined the requisite showing to proof of personal service of the judgment or order. Rather, we have determined that personal service is unnecessary if "the accused had actual knowledge of *the contents* of the judgment[.]" *Thomerson v. Thomerson*, 387 N.W.2d 509, 513 (S.D. 1986) (emphasis added) (citation omitted), *abrogated on other grounds by Sazama v. State ex rel. Muilenberg*, 2007 S.D. 17, 729 N.W.2d 335.

Here, instead of ascertaining whether Hope had actual knowledge of the *contents* of the relevant order, the circuit court focused on whether she had been provided notice of the order itself. This was an erroneous application of the law.

[¶18.] After a review of the record, it is clear that Hope had knowledge of the contents of the relevant portions of the custody and visitation agreement incorporated in the court's written judgment and decree. First, it is undisputed that Hope signed the parties' written settlement agreement. "[O]ne who accepts a written contract is conclusively presumed to know its contents . . . ." *LPN Trust v. Farrar Outdoor Advert., Inc.*, 1996 S.D. 97, ¶ 13, 552 N.W.2d 796, 799. Therefore, Hope is presumed to know what was contained in the custody and visitation provisions of this agreement. Second, when the parties reached a settlement, counsel orally related its terms on the record at a hearing where both parties were present. Relevant here, the terms related included the parties' agreement as to summer visitation. At this hearing, Hope acknowledged that she understood the agreement and agreed to be bound by it, and the circuit court ordered both parties to comply with its terms. In addition, it was apparent in Hope's colloquy with the circuit court at the contempt hearing that she knew Justin was entitled, by virtue of the court's order, to ten weeks of summer visitation. Therefore, the circuit court's finding that Hope did not have the requisite knowledge of the order at issue was clearly erroneous.

> c.     *Ability to comply and willful or contumacious disobedience*

[¶19.] Because the circuit court found Justin had not established the second element of contempt, the court did not make findings on the third and fourth

elements, i.e., whether Hope had the ability to comply with the order and whether she willfully or contumaciously disobeyed it. These elements must be considered by the circuit court in the first instance on remand.

## Conclusion

[¶20.]     The circuit court clearly erred when it found that Hope did not have knowledge of the contents of the judgment and decree of divorce. Therefore, we reverse the court's denial of Justin's contempt motion and remand for further proceedings consistent with this opinion.

[¶21.]     JENSEN, Chief Justice, and KERN and SALTER, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶22.]     MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.