#29915-a-SPM
**2023 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

MARK BROCKLEY and ANNESSE
BROCKLEY, husband and wife,                    Plaintiffs and Appellants,

          v.

MERRILL ELLIS, RONALD GUTMAN,
CLARENCE GRIFFIN and GG&E, LLC,
A.K.A. G SQUARED, LLC, a South Dakota
Limited Liability company,                     Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

JON W. DILL of
Claggett & Dill, Prof. LLC
Spearfish, South Dakota                        Attorneys for plaintiffs and
                                               appellants.


CESAR A. JUAREZ of
Lynn, Jackson, Shultz
    & Lebrun, P.C.
Sioux Falls, South Dakota

* * * *

                                               ARGUED
                                               OCTOBER 4, 2022
                                               OPINION FILED **09/27/23**

* * * *

AARON T. GALLOWAY
HAVEN L. STUCK of
Lynn, Jackson, Shultz
    & Lebrun, P.C.
Rapid City, South Dakota

                                  Attorneys for appellees
                                  Hickocks Hotel and Suites, LLC
                                  and Kimberly L. Griffin.


RICHARD A. PLUIMER
Spearfish, South Dakota

                                  Attorney for appellee Mike
                                  Trucano personally and as
                                  Trustee for the Michael J.
                                  Trucano Living Trust.

#29915

MYREN, Justice

[¶1.]	The circuit court entered two orders in which it denied requests from Mark and Annesse Brockley (the Brockleys) to hold Michael Trucano (Trucano), the Michael J. Trucano Living Trust (Trucano Trust), and Hickoks Hotel & Suites, LLC (Hickoks) in contempt. The Brockleys filed a timely appeal. We affirm.

## Factual and Procedural History

[¶2.]	In 2004, the Brockleys agreed to sell specified real estate to Allan Rosenfeld and John McGill for two million dollars under a contract for deed. The contract for deed required Rosenfeld and McGill to make monthly payments to the Brockleys for 20 years and contained an acceleration clause that made the entire amount due 30 days after a notice of default. Later, McGill quitclaimed his interest in the contract for deed and property to Rosenfeld. In 2007, Rosenfeld assigned his interest in the contract for deed to GG & E, LLC, a South Dakota limited liability company. GG & E had three members: Merrill Ellis, Ronald Gutman, and Clarence Griffin (Clarence). The Brockleys consented to the assignment in a formal document in which Ellis, Gutman, and Clarence each agreed to be obligated personally for any amounts due under the contract for deed. In 2010, GG & E changed its name to G Squared, LLC.

[¶3.]	In 2011, Michael Trucano and Clarence created a South Dakota limited liability company named N.M.D. Venture, LLC (N.M.D.) to acquire a hotel and casino in Deadwood, South Dakota. Trucano and Clarence were N.M.D.'s only members, each holding 50% ownership. The operating agreement for N.M.D.

stated, "[t]his Agreement shall be construed under the laws of the State of South Dakota."

[¶4.] In June 2014, G Squared stopped making payments on the contract for deed. The Brockleys sued G Squared, Ellis, Gutman, and Clarence, seeking the amount remaining due on the contract.

[¶5.] On March 30, 2015, Clarence assigned his membership interest in N.M.D. to himself and his wife, Kimberly Griffin, as tenants by the entirety. Trucano, the other N.M.D. member, also consented to that assignment. Clarence and Kimberly were domiciled in Florida and executed their portion of the assignment in Florida. Trucano executed his portion of the assignment in Nevada.

[¶6.] On April 15, 2015, the circuit court granted partial summary judgment in favor of the Brockleys against Ellis, Gutman, Clarence, and G Squared.

[¶7.] On June 6, 2015, Trucano assigned his membership interest in N.M.D. to the Trucano Trust. Michael and Cynthia Trucano served as trustees of that trust.

[¶8.] In December 2016, the circuit court issued a charging order directing N.M.D. to pay any distributions owed to Clarence to the Brockleys. The circuit court entered a corrected charging order on February 3, 2017, which contained an adjusted principal amount owed. Specifically, the corrected charging order directed that:

1. The interest of Defendant Clarence Griffin in N.M.D. Venture, LLC is hereby subjected to a Charging Order in favor of and for the benefit of the Plaintiffs;

2. Distributions owed or payable to said Defendant by N.M.D. Venture, LLC must be paid directly to Plaintiffs[.]

[¶9.] On February 4, 2019, N.M.D. changed its name to Hickoks Hotel & Suites, LLC. In December 2019, Hickoks agreed to sell its hotel and casino. In July 2020, Hickoks and the Trucano Trust entered into a redemption agreement. The redemption agreement provided that Hickoks would, at sale closing, redeem the entire membership interest held by the Trucano Trust in exchange for half the net proceeds from the sale of the hotel and casino. The agreement further provided that the Trucano Trust would assign its entire membership interest to Hickoks upon payment, and Trucano would resign from any office held in Hickoks. Clarence died on December 14, 2020.

[¶10.] The sale closing of the hotel and casino was set for December 29, 2020. Dakota Title conducted the closing. Kimberly's attorneys urged Trucano, as operational manager of Hickoks, to establish a new bank account in Florida in the name of Hickoks to receive the proceeds from the sale. Trucano declined to do so and directed the closing agent to deposit the proceeds into Hickoks' existing account at First Interstate Bank in Deadwood. Once the closing agent received the proceeds from the sale, half of the proceeds were transferred to the Trucano Trust to effectuate the redemption of that membership interest. Simultaneously, the Trucano Trust assigned its membership interest to Hickoks, and Trucano resigned his office as manager of Hickoks. After the redemption and after Trucano had left the Dakota Title office, Haven Stuck, an attorney for Kimberly and Hickoks, directed Dakota Title to wire the remaining proceeds from the sale to Hickoks' account at First Home Bank in Florida. Dakota Title complied. Ultimately,

Hickoks distributed these funds to Kimberly as the sole remaining member of Hickoks.

[¶11.]     In April 2021, the Brockleys filed a motion for an order to show cause, claiming that Kimberly, the Estate of Clarence Griffin, Hickoks, Trucano, and the Trucano Trust should be held in contempt for violating the charging order.  The circuit court issued the order to show cause and conducted four hearings between October and December.

[¶12.]     During the third hearing, the circuit court ruled from the bench that the Brockleys had not established that Trucano or the Trucano Trust were in contempt.  On December 13, 2021, the circuit court entered an order effectuating the ruling and incorporating its oral findings of fact and conclusions of law.  After the fourth hearing, the circuit court again gave a bench ruling in which it determined that the Brockleys had failed to establish that Hickoks was in contempt.  On January 21, 2022, the circuit court entered written findings of fact, conclusions of law, and an order effectuating that bench ruling.  The Brockleys appeal.

**Decision**

> 1. *Whether the circuit court erred when it determined Hickoks, Michael Trucano, and the Trucano Trust did not disobey the charging order.*

[¶13.]     "The civil contempt power is designed 'to force a party "to comply with orders and decrees issued by a court in a civil action[.]"'" *Hiller v. Hiller*, 2018 S.D. 74, ¶ 20, 919 N.W.2d 548, 554 (alteration in original) (quoting *Sazama v. State ex. rel. Muilenberg*, 2007 S.D. 17, ¶ 23, 729 N.W.2d 335, 344).  "We review a trial court's findings [of fact] as to contempt under a clearly erroneous standard."

*Metzger v. Metzger*, 2021 S.D. 23, ¶ 13, 958 N.W.2d 715, 719 (quoting *Taylor v. Taylor*, 2019 S.D. 27, ¶ 15, 928 N.W.2d 458, 465). "We will declare a finding of fact clearly erroneous only if we are definitely and firmly convinced that a mistake has been made." *Lien v. Lien*, 2004 S.D. 8, ¶ 14, 674 N.W.2d 816, 822 (quoting *Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 9, 658 N.W.2d 783, 786). "However, we review a court's conclusions of law de novo." *Farmer v. Farmer*, 2020 S.D. 46, ¶ 19, 948 N.W.2d 29, 35 (citing *Harksen v. Peska*, 2001 S.D. 75, ¶ 9, 630 N.W.2d 98, 101).

[¶14.]	"The required elements for a finding of civil contempt are (1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order." *Keller v. Keller*, 2003 S.D. 36, ¶ 9, 660 N.W.2d 619, 622 (quoting *Harksen*, 2001 S.D. 75, ¶ 12, 630 N.W.2d at 101). The parties agree that the first three elements were established. The Brockleys contend the circuit court clearly erred by not finding willful or contumacious disobedience of the order.

### *Michael Trucano and the Trucano Trust*

[¶15.]	The charging order did not preclude distributions to Trucano or the Trucano Trust. The Brockleys do not contend that the redemption of the membership interest held by the Trucano Trust violated the charging order. Instead, they argue Trucano, as an agent for Hickoks, should be held in contempt because they contend Hickoks distributed funds owed to Clarence in violation of the charging order and that Trucano actively participated in a scheme to avoid the application of the charging order in a manner that was willful and contumacious.

[¶16.]    A distribution is "a transfer of money, property, or other benefit from a limited liability company to a member in the member's capacity as a member or to a transferee of the member's distributional interest." SDCL 47-34A-101(5). The record establishes that after the court entered its charging order, Hickoks made no distribution of any interest owed to Clarence while either Trucano or the Trucano Trust was an owner, member, or manager of the LLC. Hickoks' sale of its hotel and casino did not, by itself, constitute a distribution. And even if Hickoks' redemption of Trucano's membership interest could be characterized as a distribution, it did not violate the charging order as it did not involve any distributional interest owed to Clarence. Additionally, the record shows that while still a member of Hickoks, Trucano exercised due diligence to ensure that there was no distribution of the sale proceeds in violation of the charging order. The Brockleys claim Trucano knew that a distribution subject to the charging order would be transferred from Hickoks' account directly to Kimberly. Still, they presented no facts to show that Trucano permitted the proceeds to be distributed out of the account while he was still an owner, member, or manager of Hickoks. The circuit court was not clearly erroneous in finding that neither Trucano nor the Trucano Trust willfully or contumaciously violated the charging order.

### *Hickoks*

[¶17.]    After the redemption of the Trucano membership, Kimberly was the only remaining member because Clarence had passed away before the sale. As part of the closing, the remaining proceeds from the sale of the hotel and casino were deposited into Hickoks' account in Florida. Although it is not entirely clear from the

record how it occurred, it is undisputed that Hickoks ultimately distributed those proceeds to Kimberly. Whether this distribution violated the charging order depends on whether it constituted a distribution of an amount owed to *Clarence*. The circuit court determined that, upon his death, Clarence's membership interest passed as a matter of law to Kimberly as the surviving tenant by the entirety. Consequently, the circuit court concluded that Hickoks' subsequent distribution to Kimberly did not violate the charging order.

[¶18.] The Brockleys contend the circuit court was wrong for two reasons. First, they argue that the assignment could not avoid the charging order because, under South Dakota law, property interests may not be held by tenants by the entirety. The Brockleys contend the assignment created a tenancy in common because the four unities of title were not present at the time of the assignment. Second, they argue that the assignment was void because it did not validly convey Clarence's distributional interest in Hickoks under South Dakota law.

### a. The effect of the 2015 assignment of Clarence's ownership interest in N.M.D.

[¶19.] "[S]tatutory interpretation and application are questions of law that we review de novo." *Coester v. Waubay Twp.*, 2018 S.D. 24, ¶ 7, 909 N.W.2d 709, 711 (quoting *Krsnak v. S.D. D.E.N.R.*, 2012 S.D. 89, ¶ 8, 824 N.W.2d 429, 433). "We discern legislative intent primarily using the language of the statute, giving the Legislature's words plain meaning and effect within the context they are used." *Id.* (citing *Perdue, Inc. v. Rounds*, 2010 S.D. 38, ¶ 9, 782 N.W.2d 375, 378).

[¶20.] A tenancy by the entirety is a form of joint ownership with the right of survivorship that can only exist between married persons; the tenancy cannot be

severed unilaterally. *United States v. Craft*, 535 U.S. 274, 280–281, 122 S. Ct. 1414, 1422, 152 L. Ed. 2d 437 (2002). The law of South Dakota has never recognized tenancies by the entirety. *Schimke v. Karlstad*, 87 S.D. 349, 356, 208 N.W.2d 710, 714 (1973). However, tenancies by the entirety are recognized under the laws of Florida. *See Clampitt v. Wick*, 320 So. 3d 826, 831 (Fla. Dist. Ct. App. 2021). Although South Dakota law does not allow for the creation of a tenancy by the entirety interest, certain statutes acknowledge the existence of such interests and attempt to reconcile that with South Dakota law. *See* SDCL 48-7A-202; SDCL 54-8A-1.

[¶21.] Clarence's assignment of his membership interest to himself and his wife also included a document in which Trucano consented to the assignment and an amendment to N.M.D.'s operating agreement. In particular, the assignment amended Section 5.08 of the operating agreement to read: "Upon the death of Clarence A. Griffin, his interest shall, by operation of law, transfer to his fellow tenant by the entirety, Kimberly L. Griffin . . . ."*

[¶22.] To willfully or contumaciously disobey the charging order, Hickocks would have to have known, at the time of the distribution to Kimberly, that Clarence's assignment did not validly create a tenancy with the right of survivorship. We need not resolve complicated issues about whether this transfer was governed by the laws of Florida or South Dakota because the ultimate consequence, in this case, is the same. We need only determine whether the circuit

---

* It also contains a similar provision providing that Kimberly's interest passed upon her death to Clarence.

court clearly erred when it found that Hickoks did not engage in willful or contumacious disobedience of the charging order.

[¶23.] The language utilized in Clarence's assignment manifests an intention to create a right of survivorship in either tenant. Under Florida law, Clarence's assignment created, at the very least, a right of survivorship in both Clarence and Kimberly. "The right of survivorship based on the express language in the conveying instrument has long been recognized in Florida." *Simon v. Koplin*, 159 So. 3d 281, 282 (Fla. Dist. Ct. App. 2015) (citing FLA. STAT. § 689.15 and noting that Florida statutory law "abolishes the right of survivorship in real and personal property held by joint tenants except in cases of estates by the entireties or in tenancies in common where the instrument creating the estate shall expressly provide for the right of survivorship"). It appears that under Florida law, the relevant unities of title need not be present when the express language in the instrument provides for a right of survivorship. *Id.* (citing *Crabtree v. Garcia*, 43 So. 2d 466, 467 (Fla. 1949)).

[¶24.] Under South Dakota law, the assignment could not create a tenancy by the entirety. Instead, the assignment would have created an ownership interest consistent with South Dakota law—a joint tenancy with the right of survivorship. As SDCL 43-2-13 provides:

> Any deed, transfer, or assignment of real or personal property from husband to wife or from wife to husband which conveys an interest in the grantor's lands or personal property and by its terms evinces an intent on the part of the grantor to create a joint tenancy between grantor and grantee *shall be held and construed to create such joint tenancy*, and any husband and wife who are grantor and grantee in any such deed, transfer, or

assignment heretofore given shall hold the property described in such deed, transfer, or assignment as joint tenants.

(Emphasis added.)

[¶25.]    Accordingly, whether Clarence's assignment is interpreted under Florida or South Dakota law, Kimberly became the sole owner of the N.M.D. ownership interest upon Clarence's death.  Hickoks' subsequent distribution to Kimberly did not violate the charging order.  Consequently, it was not clear error for the circuit court to find that Hickoks did not willfully or contumaciously violate the charging order.

### b.    Whether Clarence Griffin's assignment of his interest in Hickoks included his distributional interest.

[¶26.]    The Brockleys argue that because Clarence's assignment to himself and Kimberly used the term "membership interest" instead of "distributional interest," his "attempt to transfer his interest is void as a matter of law because it fails to comply with both the Charging Order and South Dakota law."  The Brockleys conclude that Clarence retained complete ownership of the membership and distributional interests.

[¶27.]    Hickoks' operating agreement defines a membership interest to include distributions: "[t]he interest of a Member in the Company shall be referred to as a 'Membership Interest,' which shall mean the percentage of profits, losses, and *distributions* a Member is entitled to receive under this Agreement."  (Emphasis added.)  "When the meaning of contractual language is plain and unambiguous, construction is not necessary."  *Ziegler Furniture and Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354 (quoting *Pesicka v. Pesicka*, 2000

S.D. 137, ¶ 6, 618 N.W.2d 725, 726). Under the clear terms of the operating agreement, a "membership interest" included the distributional interest.

[¶28.] Regarding their claim that Clarence's assignment of his interest failed to comply with South Dakota law, the Brockleys contend the transfer was invalid because it was not completed correctly under the regulations and statutes regarding gaming. The Brockleys rely on ARSD 20:18:06:08, which provides: "No person may sell, lease, purchase, convey, or acquire an interest in a retail licensee or operator licensee without the prior approval of the commission." ARSD 20:18:06:08. The Brockleys further note that Hickoks' operating agreement specifies that any transfer is subject to approval from the South Dakota Gaming Commission. They contend Clarence's assignment to himself and his wife was null and void because the Gaming Commission did not approve it. The Brockleys are not members of the Gaming Commission or the Hickoks corporation, and they have failed to explain how they would have standing to enforce the Gaming Commission's regulations or the corporation's operating agreement. *See* SDCL 15-6-17(a).

[¶29.] Finally, each of the Brockleys' arguments ignores the fact that Clarence assigned his membership interest (which included his distributional interest) in March 2015, well before the entry of the first charging order in December 2016.

## Conclusion

[¶30.] Civil contempt is meant to force a party to comply with an order. The only provisions in the charging order imposing an obligation on Hickoks (or Trucano as its manager) were those directing that any distributional interest owed or

payable to Clarence be paid to the Brockleys. Following the entry of the charging order, however, Hickoks never disbursed any distributional interest owed to Clarence. We affirm the circuit court because it was not clearly erroneous when it found that neither Trucano, the Trucano Trust, nor Hickoks willfully or contumaciously violated the charging order.

[¶31.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.