#30766-a-SRJ
**2025 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JOSEPH DANIEL LEFORS,                    Plaintiff and Appellee,

    v.

KRISTA MAE LEFORS,                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN FITZGERALD
Judge

* * * *

KELLY J. SANDERSON
Sturgis, South Dakota                    Attorney for defendant and
                                         appellant.


HOLLIE L. SMITH of
Clayborne, Loos & Sabers, LLP
Rapid City, South Dakota                 Attorneys for plaintiff and
                                         appellee.


* * * *

CONSIDERED ON BRIEFS
MARCH 24, 2025
OPINION FILED **08/13/25**

#30766

JENSEN, Chief Justice

[¶1.]     The circuit court entered an order imposing sanctions against Krista LeFors after finding that she had willfully violated the provisions of a visitation order. The sanctions, imposed pursuant to SDCL 25-4A-5, included the imposition of civil penalties and a portion of the attorney's fees incurred by the children's father, Joseph LeFors. Krista appeals, arguing the circuit court erred in finding a willful violation of the visitation order and in the imposition of sanctions. We affirm.

## Factual and Procedural Background

[¶2.]     Joseph and Krista were married June 4, 2002, and had two children: K.L., born in 2006, and K.M.L., born in 2009. In January 2019, Joseph left the marital home and initiated divorce proceedings. Over the last five years, the parties have extensively litigated issues involving property division, spousal support, child support, as well as custody and visitation.[1]

[¶3.]     Following a two-day trial and Krista's request to delay entry of a divorce decree, the circuit court initially entered a decree of separate maintenance. Amongst other things, the decree granted joint legal custody to both parents and primary physical custody to Krista. Noting that the children were resisting visitation and refused to enter Joseph's vehicle during exchanges, the court found

---

1.     The parties' litigation includes two prior appeals to this Court. *See LeFors v. LeFors (LeFors I)*, 2023 S.D. 24, ¶ 1, 991 N.W.2d 675, 678 (appeal from the circuit court's decree of separate maintenance entered April 2021); *LeFors v. LeFors (LeFors II)*, 10 N.W.3d 825 (S.D. 2024) (unpublished table decision) (appeal from the circuit court's decree of divorce entered October 2023). Neither of these prior appeals raised any issue involving child custody.

-1-

that a graduated parenting plan, supported by ongoing counseling, would best serve the children's interest.[2]

[¶4.]    In the years that have followed, Joseph has filed several motions and affidavits to enforce parenting time claiming that Krista has failed to comply with the court's visitation orders.  Joseph has maintained that Krista interfered with his visitation rights and actively alienated the children from him, particularly after he began a romantic relationship with, and later married, Krista's brother's ex-wife.  Krista has denied these allegations, claiming that any reluctance by the children to see Joseph stemmed from his history of physical abuse and alcohol misuse.[3]

[¶5.]    In April 2021, Joseph filed a motion to enforce visitation and requested court-ordered family counseling with the children.  The following month, Krista independently arranged for the children to start attending individual counseling

---

2.    The children began individual therapy in November 2019 with Adria Hagg and family therapy in March 2020 with Tamara Ulmer.  Ulmer testified that she conducted individual sessions with both parents and the children before conducting a joint session with Joseph and the children.  She also testified about observing a visitation between Joseph and the children.  She described how when Krista dropped the children off, the children refused to interact with Joseph or enter his car.  When Joseph tried to approach the children, they ran away from him, prompting Joseph to follow them home.  Ulmer stated that this was the first time she had "seen a child refuse to get into a vehicle with a dad or a parent and not just listen" and opined that the children acted as if they had the power to choose whether they went with Joseph.  She further opined that Krista had a high level of influence over the children and testified that "the children are acutely aware of what [Krista] is experiencing and going through" as part of the divorce.

3.    The court has never found Joseph to be a danger to the children.  However, in the decree of separate maintenance, the court found "that Joseph ha[d] inflicted emotional and physical abuse on Krista during the marriage" and that his "abuse of alcohol and domestic violence was witnessed by the children and constitutes wrongful parental misconduct."

sessions with therapist Melanie Torno. In June 2021, the circuit court ordered the children to attend family counseling sessions with Dr. Perrenoud, a clinical psychologist who Joseph had initially approached for reunification counseling.

[¶6.] Dr. Perrenoud wrote a letter to the court in September 2021, explaining that he had met individually with Joseph, Krista, and the children before attempting joint sessions with Joseph and the children. He reported no progress after four joint sessions where the children refused to speak to Joseph or remain in the same room with him. Dr. Perrenoud opined that there was evidence of parental alienation by Krista, describing her as "hurt and vengeful," and Joseph as someone making efforts to maintain relationships with both children. He attributed the children's fear of Joseph partially to misinformation about Joseph's alcohol use and alleged violence. Dr. Perrenoud also reported that Krista displayed only surface-level compliance with the court's visitation orders by presenting herself as powerless against the children's refusal to engage with Joseph.

[¶7.] In January 2022, Joseph filed a motion seeking temporary custody or expanded parenting time with the children. Both Dr. Perrenoud and Torno testified during a hearing on the motion. Torno also wrote a letter to the court describing her conversations with the children about their parents' separation, their fear of Joseph, and their frustration and lack of desire to have a relationship with their father. She recommended supervised visitation in a secure setting to address the children's safety concerns and their refusal to participate.

[¶8.] In December 2022, the circuit court entered findings of fact and conclusions of law, denying Joseph's motion:

> In this matter, the children's relationship with their father has been damaged to the point that it is almost beyond repair. Dr. Perrenoud places a significant portion of the blame for this on [Krista]. In contrast Ms. Torno does not believe [Krista] has deliberately alienated the children from their father. While this court does not possess the expertise of either Dr. Perrenoud or Ms. Torno, and while it is a very close call this court does not find or conclude that there is sufficient evidence that [Krista] has engaged in parental alienation.

The court ordered the parties to follow Torno's recommendations for reintegration.

[¶9.] Shortly thereafter, Joseph filed a motion to address his parenting time with the children based upon the recommendations of Torno. On August 18, 2023, the court ordered Joseph and the children to attend weekly reunification counseling with Michael E. Wheaton. Krista was ordered to "take all steps necessary to ensure the children attend the weekly reunification counseling" and both parents were ordered to follow all recommendations from Wheaton.

[¶10.] On November 28, 2023, Krista filed a motion for modification of parenting time consistent with the prior order in the decree of separate maintenance. She claimed that the children continued to refuse to get in the car with Joseph and were walking "roughly 10 miles home . . . through unsafe areas[.]" She argued that "[f]orcing these teenagers to have parenting time with their father has not been successful[.]" Two days later, Joseph filed a motion to enforce parenting time supported by an affidavit requesting sanctions against Krista pursuant to SDCL 25-4A-5. The affidavit alleged that Krista refused to encourage Joseph's relationship with the children and consistently failed to facilitate their visitation with him in violation of the court's custody orders.

[¶11.] At the hearing on the motions, Joseph again asked the court to impose sanctions against Krista for violating the court's prior orders. The court heard testimony from both Wheaton and Torno and spoke in-camera with the children. Torno testified that the children do not want to see Joseph due to the abusive nature of the relationship prior to the separation. She further testified that the children expressed "great concerns about dad's current relationship and feel like they have been replaced by his new family[.]" She also testified that she did not "believe there should be consequences" when the children refused to attend visitation with Joseph because the children would just "dig [in] their heels[.]"

[¶12.] Wheaton testified that he was "at a loss" for what could be done to get the children to participate and interact with Joseph "because what's happened so far has been ineffective[.]" He explained that "it's been largely supervised visitation with really no interaction or cooperation from the children." He also confirmed that the children have all the power in the relationship and that he was unaware "of any consequences that the children have had" for refusing to interact with their father. Wheaton explained that he was not familiar with how a court might handle a child refusing to attend court-ordered visitation, but "from a parenting perspective, parents would generally have some ability to influence kids through consequences for their behavior and setting expectations." Wheaton concluded that there was nothing else he could do if the children were not going to be required to attend therapy or cooperate with visitation.

[¶13.] The court entered an order on February 26, 2024, terminating the reunification counseling finding that little progress was being made due to the

children's lack of cooperation. Additionally, the court ordered a new visitation arrangement. Pursuant to the new order, Joseph would have parenting time with the children at a predetermined restaurant for approximately one hour twice a week. Krista was required to transport the children to and from the restaurants but was not to be present during the visit. The court further ordered Krista to *"encourage the children to attend dinner."* (Emphasis added.) The court did not grant Joseph's request to impose sanctions.

[¶14.] Following the second visitation under the February 26 order, Krista filed an affidavit asserting compliance with the order. She stated she encouraged the children by telling them they "should have fun and that they need to work on rebuilding their relationship with their dad." She added that Joseph was upset she was not making "the children go inside the restaurant," asserting that his anger was misplaced because she was only "required to drop [the children] off and leave the vicinity so, as their father, he is in charge at that point."

[¶15.] Joseph responded, renewing his request for sanctions, and arguing that Krista's encouragement was superficial. He claimed Krista undermined the visits by preparing the children to walk away, sending the children with food when they were supposed to be having dinner with him, and "by enabling the children to not have to rely" on a relationship with him.

[¶16.] During a status hearing on March 19, the parties reported that the children continued to refuse visitation with Joseph. K.L., nearing the age of majority, was released from further visitation, but the court ordered K.M.L. to continue visitation with Joseph under the terms of the February 26 order, including

the requirement that Krista "encourage" K.M.L. to attend. Noting a lack "of encouragement that has been valuable to the children[,]" the court warned Krista that it was "seriously contemplating" sanctions and directed her to start documenting her encouragement efforts.

[¶17.]    On April 18, Joseph filed another affidavit renewing his request for sanctions, claiming that Krista continued to undermine his parenting time. He stated that there had been no improvement and that K.M.L. still refused to sit with him inside the restaurant or speak to him when he sat with her outside. Joseph asked the court to impose $7,000 in civil penalties—calculated as $500 for each of the 14 failed visits under the order—and attorney's fees incurred because of Krista's noncompliance.

[¶18.]    Krista filed a responsive affidavit outlining her efforts to encourage K.M.L. to attend the dinners with Joseph. She claimed that despite her efforts to encourage a relationship between the two, she could not force K.M.L. to interact with Joseph. She also provided daily notes documenting her encouragement both before and after each visit.

[¶19.]    At the hearing on the motion for sanctions, the court heard testimony from Torno. She testified that K.M.L.'s feelings about Joseph have remained consistent for the last five years and that K.M.L. is "adamant that she does not want to have a relationship." The court also heard testimony from both parties regarding four of the visitations scheduled in April.

[¶20.]    Joseph testified that during all four visitations, K.M.L. refused to join him in the restaurant and would sit outside on the benches. He explained that

every time this happened, he would go out and attempt to engage K.M.L. in conversation, but she would refuse to interact with him. Joseph also described incidents that supported his belief that Krista was undermining his relationship with K.M.L., including how Krista refused to acknowledge him at school events and that Krista was permitting K.M.L. to compete under Krista's maiden name in school track meets.

[¶21.] When asked whether anyone had ever requested her approval for K.M.L.'s name change, Krista testified that she was present when K.M.L. discussed the name change with the coach but that she "was not asked for approval." Krista also explained that she does not interact with Joseph at social events and that it had been nearly a year since they had last spoken at a school event. She described documenting her efforts to encourage K.M.L.'s engagement with Joseph during visitation, maintaining she had provided such encouragement by talking about past happy memories and K.M.L.'s favorite meals to eat at the restaurant. Krista further testified that she had not seen K.M.L. walk away from Joseph while dropping her off, however, even if she had seen such behavior, she would have driven away without intervening because of the provision in the February 26 order requiring her to leave the area.

[¶22.] Following the testimony, the circuit court orally granted Joseph's motion for sanctions. The court began by noting that during each of the four scheduled dinners in April, K.M.L. sat on a bench outside the restaurant and did not engage in any conversation with Joseph. Although Krista drove K.M.L. to each visitation, the court explained that it could not "conceive of a situation where [she]

-8-

would be prohibited from staying in the vicinity of the restaurant if that is an encouragement to her daughter to go into the restaurant to have dinner with her father[.]" The court emphasized that while the expectation was for K.M.L. to interact with her father during the dinners, "the violation really is that [K.M.L.] was not encouraged by [Krista] to actually sit in the restaurant with her father for an hour on those four occasions."

[¶23.]    The court connected Krista's noncompliance to a broader pattern of behavior undermining Joseph's relationship with K.M.L., stating "that [Krista] is not encouraging this child to have a relationship with her father, and part of that also goes with the name-change business." The court explained that it could not envision how Krista could be "encouraging and fostering any type of a positive relationship with the father when" both children were attempting to distance themselves from their father's last name.

[¶24.]    In its written findings of fact and conclusions of law, the court found that Krista had the opportunity to encourage visitation because K.M.L. lives with her all of the time; that Krista "is fully capable of encouraging the children to meet with their father;" and that she "certainly has the ability to comply with the order[.]" The court further explained that by actively allowing K.M.L. to compete in track under a different surname, Krista is not encouraging K.M.L.'s relationship with Joseph. The court also emphasized that the one-hour dinners were conceived as the first step in an incremental plan to increase Joseph's parenting time and "not a difficult visitation." Pursuant to SDCL 25-4A-5, the court ordered Krista to pay a

$500 civil penalty for each of the four failed visits in April, for a total of $2,000, as well as $2,000 in attorney's fees.

[¶25.] Krista objected to Joseph's proposed findings of fact and conclusions of law, claiming for the first time that the court was without jurisdiction over her because Joseph failed to make a motion for order to show cause and she was not personally served with an order to show cause. Krista appeals raising four issues:

1. Whether the circuit court erred in finding that Krista had willfully violated the visitation order without first requiring an order to show cause and personal service of such order on Krista.

2. Whether the circuit court clearly erred in finding that Krista willfully violated the visitation order based on the evidence of K.M.L.'s refusal to eat dinner with Joseph.

3. Whether the circuit court abused its discretion in issuing sanctions of $500 for each violation.

4. Whether the circuit court abused its discretion in ordering Krista to pay $2,000 in attorney's fees.

**Standard of Review**

[¶26.] "Matters of judicial discretion, such as an award of attorney fees or the court's remedy for contempt, are reviewed for an abuse of discretion." *Hiller v. Hiller*, 2018 S.D. 74, ¶ 19, 919 N.W.2d 548, 554 (citation omitted). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary and unreasonable.'" *Id.* (quoting *Thurman v. CUNA Mut. Ins. Soc'y*, 2013 S.D. 63, ¶ 11, 836 N.W.2d 611, 616). We review the circuit court's findings of fact "under the clearly erroneous standard. This Court must be left with a definite and firm

conviction that a mistake has been made to overturn a circuit court's findings."

*Dunham v. Sabers*, 2022 S.D. 65, ¶ 27, 981 N.W.2d 620, 633 (citation omitted).

## Analysis

### *Procedural requirements under SDCL 25-4A-4.1 and 5.*

[¶27.]     Krista contends that the circuit court lacked jurisdiction to find her in contempt because Joseph failed to file and personally serve an order to show cause with the accompanying affidavit before the hearing. Joseph responds that the procedural requirements applicable to civil contempt do not apply because he sought sanctions under SDCL 25-4A-5, which permits the imposition of sanctions, including attorney's fees, for willful noncompliance with custody or visitation orders independent from the law of contempt. Joseph further contends that Krista's objection to the absence of a formal order to show cause should be deemed waived because Krista received proper notice, had ample opportunity to respond, participated in the hearing, and did not raise these procedural issues in her pleadings.

[¶28.]     South Dakota law provides that "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading[.]" SDCL 15-6-12(b). Moreover, an objection for lack of personal jurisdiction, "insufficiency of process, or insufficiency of service of process is waived" unless the objection is raised in the answer or by motion before the filing of a responsive pleading. SDCL 15-6-12(h)(1). Krista appeared at the hearing and did not raise the alleged procedural irregularities until after the conclusion of the hearing. Notwithstanding any waiver, we conclude Krista's claim fails on the merits.

[¶29.]     Although a court can impose sanctions through civil contempt under SDCL 25-4A-1, a court also possesses statutory authority to impose sanctions under SDCL 25-4A-5 when considering a motion to enforce visitation rights pursuant to SDCL 25-4A-4.1.  Under SDCL 25-4A-4.1 "[i]f a noncustodial parent believes that the custodial parent has willfully violated or willfully failed to comply with any provisions of a custody or visitation decree, the noncustodial parent may file . . . a motion for enforcement of visitation rights."  Once such a motion is filed, "the court shall immediately set a hearing on the motion[.]"  *Id.*  SDCL 25-4A-5 directs a court to punish willful noncompliance of a custody or visitation order by imposing "appropriate sanctions"—including but not limited to attorney's fees and civil penalties.  In *Hiller*, this Court explained that even though "the elements of civil contempt feature overlapping factual considerations" with SDCL 25-4A-5, the "discrete statutory authority to sanction or punish a party" under SDCL 25-4A-5 is "strictly speaking, unconnected to the law of contempt[.]"  2018 S.D. 74, ¶ 28, 919 N.W.2d at 556.

[¶30.]     Shortly after Krista moved to modify the August 2023 visitation order, Joseph sought sanctions under SDCL 25-4A-5 by filing a motion to enforce his parenting time pursuant to SDCL 25-4A-4.1.  Joseph's motion, supported by an affidavit, alleged that Krista had willfully violated the court's prior visitation orders.  Joseph's request for sanctions was therefore properly initiated under the procedures set forth in SDCL 25-4A-4.1.

*Finding of a willful violation of the court's order.*

[¶31.]     Krista contends that the circuit court clearly erred in finding she willfully failed to comply with the provision in the February 26 order requiring her to "encourage" K.M.L. to attend dinner with Joseph.  She argues the court failed to properly consider K.M.L.'s expressed opposition to visitation as well as whether continued visitation served the child's best interests given K.M.L.'s stated reasons for refusing to participate.  Krista further contends that the court erred in finding she could control her fifteen-year-old daughter's refusal to attend the dinners and in treating K.M.L.'s refusal as a willful violation of the order by Krista.

[¶32.]     To impose sanctions under SDCL 25-4A-5, a court must find that a party "willfully violated or willfully failed to comply" with a visitation order—a finding that entails the same factual considerations as civil contempt, including: "(1) the existence of an order; (2) knowledge of the order; (3) ability to comply with the order; and (4) willful or contumacious disobedience of the order."  *Metzger v. Metzger*, 2021 S.D. 23, ¶ 13, 958 N.W.2d 715, 719 (citation omitted).  *See also Hiller*, 2018 S.D. 74, ¶ 28, 919 N.W.2d at 556 (explaining that, although SDCL 25-4A-5 operates outside formal contempt proceedings, "the elements of civil contempt feature overlapping factual considerations").

[¶33.]     While the preference of an adolescent child is a consideration in custody decisions, "it will be in the best interests of children that they receive the love, affection, training, and companionship of their noncustodial parent."  *Pieper v. Pieper*, 2013 S.D. 98, ¶ 15, 841 N.W.2d 781, 786 (citation omitted).  Torno, along with all four other counselors involved in the case, testified that it was in the best

interest of the children to have a relationship with Joseph. While Torno recommended against forcing the visits contrary to the children's wishes, the circuit court was not required to adopt her opinion. Additionally, notwithstanding K.M.L.'s defiance toward the visits, there was ample evidence in the record from which the court could conclude that Krista had tremendous ability to influence K.M.L. and that Krista was not supportive of a relationship between K.M.L. and Joseph.

[¶34.]     In *Hiller* we upheld a circuit court's finding, under SDCL 25-4A-5, that a father willfully failed to comply with a visitation order after his fifteen-year-old daughter refused to attend visitations with her mother. 2018 S.D. 74, ¶ 21, 919 N.W.2d at 554–55. Like Krista, the father in *Hiller* claimed that he was unable to control his teenaged daughter's decision not to visit her mother because the daughter "was a strong-willed teenager who unilaterally refused to attend visitation" and he was "unable to physically force [her] to attend visits" when the mother's boyfriend was present. *Id.* ¶ 21, 919 N.W.2d at 554. We rejected this argument, noting the primacy of the circuit court's fact-finding role and credibility determinations. The circuit court viewed the father as "duplicitous" and the record supported the conclusion that the father could have secured the daughter's compliance had he "communicated the plan to [the daughter], stressed his assent, and warned of consequences should she disobey." *Id.* ¶ 21, 919 N.W.2d at 555.

[¶35.]     Here, the circuit court noted as part of its findings that it had "determined the credibility of each witness." *See Jameson v. Jameson*, 306 N.W.2d 240, 242 (S.D. 1981) ("The general rule that the weight of the evidence and the credibility of the witnesses is largely a matter of the trial court's determination is

especially applicable in contempt proceedings."). The court found Krista's testimony criticizing Joseph to be disingenuous and was unconvinced by Krista's claim of helplessness against K.M.L.'s refusal to attend visitation. Although the court heard testimony describing K.M.L. as "stubborn" and "determined," the court also had the opportunity to evaluate Krista's ability to influence K.M.L. and spoke with K.M.L. in-camera. Describing K.M.L. as a "very bright, intelligent, young lady," the court determined, based upon K.M.L.'s maturity, that she was capable of following a straightforward directive when that directive is conveyed firmly and consistently by a parent whose conduct underscores its importance.

[¶36.] In the court's view, K.M.L.'s blanket refusal to even sit at the table with Joseph was not the product of uncontrollable teenage defiance, but the result of a lack of parental encouragement by Krista. This finding is supported by the evidence. Since Joseph left the marital home in 2019, Krista has repeatedly communicated to him that it is not her responsibility to help him facilitate a relationship with the children and her conduct has consistently matched that stance. Over the last five years, the children have refused nearly all visitation with Joseph and have taken significant steps to avoid contact with him, including hiding, running away, and walking several miles home. While Krista has transported the children to these failed visitations, she has let the children decide whether they engage with Joseph or stay with him. The children have also actively resisted

court-ordered reintegration counseling, refusing to enter the offices of court-approved professionals while Krista observed without intervening.[4]

[¶37.]	Although Krista documented her conversations encouraging K.M.L. to attend dinner with Joseph, her participation in allowing K.M.L. to compete in track under Krista's maiden name, rather than Joseph's surname, undermines her claim of encouragement. The court could infer from this conduct that Krista signaled to K.M.L. that her father is not a part of her identity and that she can pretend her father does not exist—the very dynamic the visitation dinners were intended to address.

[¶38.]	Taken to its logical conclusion, Krista's argument would allow a primary custodial parent to abdicate the responsibility of fostering and encouraging a relationship with the noncustodial parent once a child reaches adolescence and expresses a desire not to engage with the noncustodial parent. This is contrary to the best interest of the child factors we identified in *Fuerstenberg v. Fuerstenberg*, which consider a parent's "willingness to maturely encourage and provide frequent and meaningful contact between the child and the other parent" as part of parental fitness. 1999 S.D. 35, ¶ 24, 591 N.W.2d 798, 807. While not an exclusive factor for determining custody, this Court has affirmed custody decisions that placed

---

4.	Krista argues that the court's findings are inconsistent with its earlier finding in 2022 that she had not engaged in parental alienation. While a different judge presided over the custody disputes in this case prior to 2023, even the same judge may reach different conclusions over time as it considers additional evidence or as family dynamics evolve. More importantly, a finding that a parent failed to encourage visitation in violation of a specific court order is not antithetical to a prior finding, pertaining to a requested modification of custody and visitation, that the parent had not engaged in parental alienation.

significant weight on a parent's unwillingness to support the child's relationship with the other parent. *See Kreps v. Kreps*, 2010 S.D. 12, ¶¶ 33–37, 778 N.W.2d 835, 845–46. Moreover, Joseph has had joint legal custody of the children since the inception of this case. The Legislature has directed that "[e]ach parent sharing joint legal custody of their child *shall* foster the other parent's relationship with the child." SDCL 25-5-7.6 (emphasis added).[5]

[¶39.] The circuit court's finding that Krista willfully failed to comply with the order to encourage K.M.L. to attend visitation is not clearly erroneous.

***Issuance of $500 sanction for each violation.***

[¶40.] Krista argues that the circuit court abused its discretion by imposing a $500 civil penalty for each of the four failed visitations in April without making specific findings to justify the amount, including an analysis of its reasonableness or its impact on her ability to financially support the children. Joseph responds that once the court found a willful violation of the visitation order, it had broad discretion to determine the appropriate sanction.

[¶41.] When a circuit court finds that a party "has willfully violated or willfully failed to comply" with a visitation order, SDCL 25-4A-5 directs the court to impose appropriate sanctions "to punish the offender or to compel the offender to comply with the terms of the custody or visitation decree." Thus, like the civil

---

5.     The parenting guidelines adopted by this Court also instruct parents to encourage a relationship and visitation with the other parent. SDCL chapter 25-4A APP A Guideline 4.1 ("Each parent shall encourage the children to respect the other parent."); *and* SDCL chapter 25-4A APP A Guideline 4.14 ("Parents should always encourage the children to attend parenting time with the other parent[.]").

contempt power, the purpose of the statute is "to force a party to comply with orders and decrees issued by a court" regarding custody and visitation rights. *Metzger*, 2021 S.D. 23, ¶ 13, 958 N.W.2d at 718 (quoting *Taylor v. Taylor*, 2019 S.D. 27, ¶ 39, 928 N.W.2d 458, 470–71).

[¶42.] After finding that Krista willfully violated the February 26 order, the court imposed a $500 penalty for each of the four failed visitations in April, pursuant to SDCL 25-4A-5(3). Although the court did not make detailed findings for each violation, it is clear that the court determined Krista had willfully failed to comply with the order to encourage K.M.L.'s attendance at each scheduled dinner. The court's findings are supported by the record and are sufficient to support the imposition of a $500 sanction for each failed visitation.

[¶43.] Krista cites no authority to support her argument that a court is required to make specific findings concerning the reasonableness of civil penalties. Rather, the reasonableness of a civil penalty is a question of law and subject to constitutional limits.[6] Krista has not raised a constitutional challenge to the reasonableness of the sanctions authorized by the statute.

---

6.  In *Roth v. Farner-Bocken Co.*, this Court discussed the constitutional limits of punitive damages as a form of civil penalty or punishment under the Due Process Clause. We recognized that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor" and "must comply with the due process clause's 'general concern for reasonableness.'" 2003 S.D. 80, ¶ 44, 667 N.W.2d 651, 665 (citation omitted). Similarly, we have considered the constitutional limits of civil penalties under the Eighth Amendment. *See State v. One 1995 Silver Jeep Grand Cherokee*, 2006 S.D. 29, ¶ 6, 712 N.W.2d 646, 650 ("It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." (citation omitted)).

[¶44.] Krista challenges the circuit court's statutory authority to impose four civil penalties totaling $2,000. However, she did not raise this specific argument before the circuit court. In her post-hearing objections to the findings of fact and conclusions of law, she argued that the cumulative civil penalties totaling $2,000 were not reasonable, but she did not argue that the aggregate amount exceeded the $1,000 maximum for a civil penalty under SDCL 25-4A-5(3). We generally treat issues that were not raised in the circuit court as waived. *See Goeden v. Goeden*, 2024 S.D. 51, ¶ 34, 11 N.W.3d 768, 779 ("[W]e will not address for the first time on appeal issues not raised below[.]" (citation omitted)).

[¶45.] Notwithstanding any waiver, we conclude the circuit court acted within the parameters of SDCL 25-4A-5(3) by imposing a $500 penalty for each willful violation of the February 26 order. Once a court finds that a party has willfully violated "any provisions of a custody or visitation decree," SDCL 25-4A-5(3) permits the imposition of "a civil penalty of not more than the sum of one thousand dollars[.]" Nothing in the text of the statute imposes an aggregate cap on penalties for multiple violations. *See Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶11, 932 N.W.2d 135, 139 ("In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." (citation omitted)).

[¶46.] The court found that Krista willfully violated the order to encourage K.M.L. to attend dinner with Joseph on four separate occasions and imposed a sanction of $500 for each violation. Therefore, the circuit court acted within its statutory authority by imposing the sanctions.

***Attorney's fees.***

[¶47.]     Krista contends that the circuit court abused its discretion in ordering her to pay $2,000 in attorney's fees without making findings as to the reasonableness and necessity of such an award.  In particular, she argues that the court failed to make any findings concerning her ability to pay attorney's fees or how the sanction will impact her ability to support the children.[7]  Joseph, relying on our decision in *Hiller*, argues that the award of attorney's fees was imposed as a sanction under SDCL 25-4A-5(2), and therefore did not require the ordinary analysis of reasonableness and necessity.

[¶48.]     In *Hiller*, this Court upheld an attorney-fee award imposed under SDCL 25-4A-5(2) after the circuit court found a willful violation of a custody order even though the circuit court did not make detailed findings as to the necessity of the award.  2018 S.D. 74, ¶ 28, 919 N.W.2d at 556.  We held that when awarding attorney's fees as a sanction under SDCL 25-4A-5(2), "a circuit court's findings relating to necessity are sufficient so long as they adequately support the determination that the offending 'party has willfully violated or willfully failed to comply with any provisions of a custody or visitation decree[.]'"  *Hiller*, 2018 S.D. 74, ¶ 28, 919 N.W.2d at 556 (quoting SDCL 25-4A-5(2)).  Thus, we concluded that "an inquiry into a party's relative worth, income, or liquidity is not required or relevant to this analysis."  *Id.* ¶ 29.  However, consistent with the text of SDCL 25-4A-5(2),

---

7.     The court noted Krista's limited financial resources and stated at the hearing that Krista could offset the imposed sanctions against past due amounts owed by Joseph.  The written order does not, however, include such a provision and the parties have not addressed this discrepancy on appeal.

limiting the award to "reasonable attorney's fees incurred as a result of the noncompliance," we concluded that "an attorney fees award under SDCL 25-4A-5(2) must still be reasonable." *Id.* ¶ 30.

[¶49.] Although the circuit court reviewed the itemized billing statement submitted by Joseph and reduced the requested fees to $2,000, it made no findings concerning the reasonableness of the award or how it calculated the awarded amount, aside from noting Krista's difficult financial position. "[T]he failure to file findings of fact and conclusions of law constitutes reversible error, [but] we have also noted that an appellate court may remand for findings, or, because findings are not jurisdictional, 'an appellate court may decide the appeal without further findings if it feels it is in a position to do so.'" *Toft v. Toft*, 2006 S.D. 91, ¶ 11, 723 N.W.2d 546, 550 (citations omitted). In this instance, the court expressly noted its review of the itemized statement submitted by Joseph before reducing the requested fees by more than one-half. Further, given the motions and multiple hearings regarding the visitation issues and Joseph's request for sanctions, we are able to affirm the reasonableness of the award without remanding for additional findings from the circuit court.

[¶50.] Finally, Joseph has requested attorney's fees incurred from this appeal in the amount of $5,253.20. We decline to award any appellate attorney's fees.

[¶51.] We affirm.

[¶52.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.